RECEIVED
IN ALEXANDRIA, LA

JUN 2 9 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| PAMELA G. LINCOLN,<br>    Appellant | CIVIL ACTION<br>NO. CV09-1393-A |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY,<br>    Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Pamela G. Lincoln ("Lincoln") filed an application for supplemental security income benefits ("SSI") on January 9, 2007 (protective filing date), alleging a disability onset date of August 31, 2005 (Tr. p. 62) due to obesity and back problems, a "ruptured sciatic nerve," pain all over, and anxiety/depression (Tr. p. 72). That application was denied by the Social Security Administration ("SSA") (Tr. p. 38).

A de novo hearing was held before an administrative law judge ("ALJ") on June 5, 2008, at which Lincoln appeared with her attorney and a vocational expert ("VE"). (Tr. p. 8). The ALJ found that, although Lincoln suffers from severe degenerative disc disease of the lumbar spine, obesity, and right carpal tunnel syndrome, she has the residual functional capacity to perform the full range of sedentary work and was not disabled at any time through the date of his decision on August 28, 2008 (Tr. pp. 27-37).

Lincoln requested a review of the ALJ's decision, but the

Appeals Council declined to review it (Tr. p. 1) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Lincoln next filed this appeal for judicial review of the Commissioner's final decision. On appeal, Lincoln contends the ALJ erred in failing to give proper consideration to all of her medically determined severe impairments, resulting in a decision that is not supported by substantial evidence.

### Eligibility for SSI Benefits

To qualify for SSI benefits, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1381(a). Eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. § 1382(a). To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than 12 months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382(a)(3). The earliest month for which an eligible SSI claimant can receive benefits is the month following the month his application was filed, 20 C.F.R. § 416.335, or the month following the month during the pendency of the application that the claimant meets all the eligibility requirements, 20 C.F.R. § 416.330(a).

### Summary of Pertinent Facts

Lincoln was 37 years old at the time of her June 5, 2008

administrative hearing, had a tenth grade education, and no past relevant work experience (Tr. pp. 11, 12, 18).

1. Medical Records

In July 2006, Lincoln went to LSU Medical Center with complaints of leg pain; an ultrasound of her left leg was negative (Tr. p. 127) and chest x-rays were normal (Tr. p. 128). In September 2006, Lincoln was 36 years old, weighed 367 pounds, was anemic and hypokalemic,[1] and had hypertension, low back pain, and anxiety, for which she was prescribed medication (Tr. p. 122). Lincoln was also told to lose weight and see the nutritionist (Tr. p. 122). Nerve conduction studies in November 2006 showed abnormal responses in both arms and both legs (Tr. pp. 114-117, 411-412). In December 2006, Lincoln was diagnosed with "radiculopathy/polyneuropathies" and an MRI of her lumber spine was requested (Tr. p. 111). However, Lincoln was too large for the MRI machine and was told to try to lose fifty pounds (Tr. pp. 109-110).

An MRI of Lincoln's lumbar spine in January 2007 showed very mild degenerative disc disease at L3-4 with moderate degenerative facet changes at L3-4 and L4-5 without any evidence of stenosis (Tr. pp. 280, 410). MRIs of Lincoln's cervical and lumbar spine in February 2007 were normal and showed well-maintained disc spaces and no evidence of fractures or dislocations (Tr. pp. 199-200).

Also in February 2007, Lincoln was evaluated in the emergency

---

[1] Hypokalemic means a deficiency of potassium in the blood. MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: Hypokalemic, *available at* http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

room for "aches and pains" stemming from a motor vehicle accident four days earlier (Tr. pp. 195-197), when Lincoln had been treated for back strain and paraspinal muscle spasm with a Medrol dose pack, Flexaril, and Lortab (Tr. pp. 342-343). Lincoln had a full range of motion in her extremities, no edema or effusion, no abnormalities, she ambulated without difficulty, and her motor strength in all extremities was normal, but she had pain on movement and palpation (Tr. pp. 195-197). Lincoln was sent home with prescriptions for Motrin and Tylenol #3 (Tr. pp. 194, 196). Lincoln repeated the ER visit in March 2007, nothing new was found, and she was sent home with prescriptions for Norflex, Tylenol #3, and an ophthalmic ointment (Tr. pp. 181-185).

In February 2007, Lincoln (then 36 years old) was evaluated by Dr. Joe Huang for the SSA (Tr. pp. 133-135). Dr. Huang concluded she had tenderness in the cervical to the lumbar spine, decreased lumbar flexion and hip flexion, and positive straight leg raises on the right side with sciatica symptoms (Tr. p. 135). Dr. Huang also found some joint space decrease at L1 and L4, and noted that Lincoln is morbidly overweight at 54" tall and 379 pounds (Tr. pp. 134-135). Dr. Huang noted that Lincoln suffers from depression which is controlled and asymptomatic (Tr. p. 135).

A non-examining consultant, Dr. A. Edward Dean, filled out a physical residual functional capacity assessment form on Lincoln in March 2007, finding Lincoln can occasionally lift and/or carry 20 pounds, frequently lift and/or carry ten pounds, stand and/or walk a total of two hours in an eight-hour workday but can stand up to

4

four hours in a workday, sit six hours in an eight-hour workday, is limited in her ability to push and/or pull with her lower extremities, cannot climb a ladder/rope or scaffolds, and can only occasionally climb a ramp or stairs, balance, stoop, kneel, crouch, or crawl (Tr. pp. 138-144). In March 2007, a psychiatric review technique form was filled out by Jack Spurrier, a psychologist, who found Lincoln does not have any mental difficulties and her complaints of anxiety are not credible (Tr. pp. 146-158).

In July 2007, Lincoln went to the emergency room again for headaches and menstrual disorder (Tr. p. 166). Lincoln's blood work showed opiates were present, but nothing else was found (Tr. pp. 167, 172, 175) and Lincoln was sent home (Tr. p. 165).

Dr. Gerald J. Leglue, Jr. evaluated Lincoln in April and May 2007 (Tr. pp. 220, 229, 251-252). A cervical MRI was abnormal and showed a herniation at C2-3 with no extruded disc or foraminal impingement and a shallow protrusion at C3-4 that was noncompressive (Tr. pp. 220, 225, 409); Dr. Leglue referred Lincoln for a neurological evaluation, began cervical traction with physical therapy, and prescribed Vicodin and Naprosyn (Tr. p. 220). The neurologist, Dr. M. Lawrence Drerup, found chronic mechanical posterior cervical pain with subjective complaints of bilateral upper extremity pain, sensory changes, and motor weakness after a motor vehicle accident on February 21, 2007, a possible disc herniation at C2-3, morbid obesity, and chronic mechanical low back pain subjectively exacerbated by the February 2007 accident (Tr. p. 283). The neurologist recommended EMG/nerve conduction studies of

Lincoln's upper extremities and cervical epidural steroid injections (Tr. p. 288).

Dr. Leglue stated, in September 2007, that Lincoln can lift/carry up to ten pounds frequently and up to 20 pounds occasionally (Tr. p. 291), can sit for two hours at a time and up to six hours in an 8-hour workday, can stand for 30 minutes at a time and up to two hours in an 8-hour workday, and can walk for 15 to 30 minutes at a time and up to one hour in an eight-hour workday (Tr. p. 292), can reach overhead occasionally, reach elsewhere frequently, and can handle, finger, feel, and push/pull occasionally (Tr. p. 293), can operate foot controls occasionally (Tr. p. 293), cannot climb ladders or scaffolds, and cannot crawl, but can occasionally climb stairs and ramps, can balance, stoop, kneel, crouch, and can flex or rotate her neck (Tr. p. 294), cannot work at unprotected heights or operate moving equipment, and cannot be around dust odors, fumes, pulmonary irritants, and temperatures under 65° F or over 75° F (Tr. p. 294), would need to take unscheduled 15 minute breaks every two hours for pain and fatigue, and would miss work at least once a week due to drowsiness (Tr. p. 295).

In August 2007, Lincoln was referred to physical therapy, where she was given an exercise program to do independently at home (Tr. pp. 388-389). An October 2007 EMG of Lincoln's upper extremities revealed right carpal tunnel syndrome (Tr. p. 408). She also reported "throbbing" knee pain with swelling, but her knee appeared normal and she was discharged with Ibuprofen and Tylenol

(Tr. pp. 377-380).

Lincoln was evaluated in November 2007 for coughing and shortness or breath, but her chest x-rays were unremarkable (Tr. pp. 302-326). Lincoln's complaints of chest pain in December 2007 were determined to be caused by costochondritis[2] and anxiety (Tr. pp. 340-341).

X-rays of Lincoln's right shoulder in January 2008 showed some degenerative changes of the AC joint, but were otherwise unremarkable (Tr. p. 301). In April 2008, Lincoln again complained of joint pain predominantly in her wrists, ankles, back and neck; again, there were no objective findings and Lincoln was prescribed Diclofenac and Misoprostol (Tr. pp. 363-367).

2. June 2008 Administrative Hearing

At her 2008 administrative hearing, Lincoln testified that she was 37 years old, had a tenth grade education, was 5'4" tall, weighed 367 pounds, was married but separated, and lived with her son (17 years old) and daughter (11 years old) (Tr. pp. 11-12). Lincoln testified she had worked briefly for Humana about 15 years ago (Tr. p. 12). Lincoln testified that she cannot work due to constant pain in her neck, back, arms and legs (Tr. p. 13). Lincoln testified she has pain when she does nothing, and the pain is aggravated when she does something such as washing dishes and

---

[2] Costochondritis is an inflammation of a rib or the cartilage connecting a rib and is a common cause of chest pain. MEDLINEplus Health Information, Medical Encyclopedia: Costochondritis, available at http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

housework (Tr. p. 13).

Lincoln testified that she has a degenerative disk in her back, and severe carpal tunnel syndrome in her left and right arms (Tr. p. 14). Lincoln testified that she used to cook at home a lot, but stopped when she started having pain in her hands which has increased through the years (Tr. p. 14).

Lincoln testified that she is on her feet two or three hours a day, sits three or four hours a day, and spends most of her time in bed (Tr. p. 15). Lincoln testified she can stand up to fifteen minutes at a time, lift up to ten pounds, and walk a block (Tr. pp. 14-15). Lincoln testified she is not able to use her hands to grasp and handle things due to pain from her hands to her shoulders, but carpal tunnel surgery has never been performed (Tr. p. 16). Lincoln testified she cannot always stoop or bend down to pick up something off the floor due to pain (Tr. p. 16).

On a typical day, Lincoln gets up early, does not sleep much at night, watches TV, talks on the phone, visits, cooks, dust mops (but cannot vacuum), grocery shops sometimes, and goes to church sometimes (Tr. p. 17). Lincoln testified that, when she goes to the grocery store, she rides in a motorized cart (Tr. p. 17). Lincoln testified that she spends most of her time in bed due to leg and back pain (Tr. p. 17).

The ALJ posed a hypothetical question to the vocational expert ("VE"), involving a person of Lincoln's age and vocational and educational background, who can sit all day, stand two hours a day, and lift ten pounds (Tr. p. 18). The VE testified that such a

8

person could perform sedentary work such as assembly line work (175,000 jobs nationally), hand packer (13,000 jobs nationally), or food order clerk (Tr. pp. 18-19). The VE testified that a food order clerk primarily handles a telephone and writes down orders (Tr. p. 20).

The ALJ posed a second hypothetical question involving the same person with the same limitations, but with the additional limitations of only occasional handling, fingering, and feeling bilaterally (Tr. p. 19). The VE testified that such a person would not be able to do the jobs previously listed because she would not be able to use her hands (Tr. p. 19). The VE further testified that Lincoln would not be able to sustain employment if she had to lie down during working hours, take a couple of unscheduled fifteen minute breaks every day, or have to miss work or leave work early at least once a week (Tr. pp. 19-20).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Lincoln (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work she did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not

disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that she is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Lincoln has not engaged in substantial gainful activity since December 28, 2006 (the date of her SSI application) and that she has severe impairments of degenerative disc disease or the lumbar spine, obesity, and right carpal tunnel syndrome, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. pp. 29, 34). The ALJ then found that Lincoln did not have any past relevant work, so she did not have any transferrable job skills (Tr. p. 36). At Step No. 5 of the sequential process, the ALJ further found that Lincoln is a younger individual with a limited education who has the residual functional capacity to perform the full range of sedentary work (Tr. p. 36) The ALJ concluded that Lincoln was not under a disability as defined in the Social Security Act at any time from December 28, 2006 through the date of the ALJ's decision on August 28, 2008 (Tr.

10

p. 38).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have

authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Law and Analysis

Lincoln contends the ALJ erred in failing to give proper consideration to all of her medically determined severe impairments, resulting in a decision that is not supported by substantial evidence. Specifically, Lincoln contends the ALJ erred in failing to find she also suffers from "lower extremity sensory-motor polyneuropathies,[3] left S1 radiculopathy, sciatica on the right, cervical myofascial pain syndrome, bilateral rotator cuff myofascial pain syndrome, right periformis syndrome, right iliolumbar dysfunction, right hip bursitis versus osteoarthritis,

---

[3] Neuropathy means a disease of or damage to nerves. When it occurs outside of the brain or spinal cord, it is called a peripheral neuropathy. Mononeuropathy means one nerve is involved. Polyneuropathy means that many nerves are involved. Neuropathy can affect nerves that provide feeling (sensory neuropathy) or cause movement (motor neuropathy). It can also affect both, in which case it is called a sensorimotor neuropathy.  Sensorimotor polyneuropathy is a body-wide (systemic) process that damages nerve cells, nerve fibers (axons), and nerve coverings (myelin sheath). Damage to the covering of the nerve cell causes nerve signals to slow down. Damage to the nerve fiber or entire nerve cell can make the nerve stop working.  MEDLINEplus Health Information, Medical Encyclopedia: Sensorimotor polyneuropathy, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

herniation at C2-3 and degenerative acromioclavicular joint changes in the right shoulder."

Contrary to Lincoln's contention, the ALJ considered all of these alleged symptoms or impairments and the evidence as to each, and explained why each was rejected or not considered fully credible (Tr. pp. 29-34). In finding these "impairments" are not severe, the ALJ relied heavily, and correctly, on the facts that Lincoln does not have muscle weakness or atrophy and she has a full range of motion in all joints. An impairment can be considered as not severe if it is a slight abnormality which has such a minimal effect on the claimant that it would not be expected to interfere with the individual's ability to work. <u>Estran v. Heckler</u>, 745 F. 2d 340, 341 (5th Cir. 1984). See also, <u>Anthony v. Sullivan</u>, 954 F.2d 289 (5th Cir. 1992). As demonstrated by Lincoln's medical records, these medical conditions do not necessarily affect her ability to perform work-related activities. The sensory-motor polyneuropathies in Lincoln's lower extremities and left radiculopathy were findings from an EMG and nerve conduction studies in 2006; subsequent tests in 2007 showed no muscle weakness anywhere, no atrophy, sensory intact throughout, and equal deep tendon reflexes. The "sciatica on the right" was actually just "symptoms of sciatica" on the right side in February 2007; that was the only mention of sciatica. The cervical myofascial pain syndrome, right periformis syndrome, right iliolumbar dysfunction, and right hip bursitis versus osteoarthritis were only preliminary impressions by Dr. Leglue which he intended to explore further

through an MRI, electrodiagnostic studies, and a referral to a neurosurgeon. The disc herniation at C2-3 had no extruded disc or foraminal impingement and the shallow protrusion at C3-4 was non-compressive. Finally, x-rays showed the degenerative acromioclavicular joint changes in Lincoln's right shoulder were unremarkable.

Lincoln clearly failed to carry her burden of proving any of these medical conditions affected her ability to work. Therefore, Lincoln's argument that the ALJ erred in failing to these medical conditions constitute severe impairments is meritless.

Lincoln also contends, again erroneously, that the ALJ erred in failing to consider the effects of her impairments in combination with her extreme obesity.[4] The ALJ specifically considered Lincoln's physical complaints and obesity, stating (Tr. p. 35):

> "Obesity is not a listed impairment. It is considered as to how it affects her impairments according to Social Security Ruling 02-01p. It obviously affects her neck, back and joint pain. She needs to lose weight but has not. She has been counseled time and again to lose weight. It has been considered in arriving at her residual functional capacity."

Since the ALJ considered Lincoln's obesity in conjunction with her other impairments in determining her residual functional capacity,

---

[4] Obesity should be considered in combination with other impairments in making the residual functional capacity determination and in discussing the claimant's ability to perform sustained work activities. Beck v. Barnhart, 205 Fed.Appx. 207, 212 (5th Cir. 2006), citing SSR 02-1p. Moreover, the Fifth Circuit has found that the ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it. Hammond v. Barnhart, 124 Fed.Appx. 847 (5th Cir. 2005).

this issue is meritless.

Next, Lincoln argues the ALJ erred in finding the impairments to her right shoulder and knees are not severe. However, although x-rays showed degenerative changes of the AC joint, they were otherwise unremarkable. Moreover, there is no objective medical evidence in the record which establishes there is anything wrong with Lincoln's knees. This issue is meritless.

Lincoln also contends the ALJ erred in failing to find the combination of all of her impairments met or equaled a listed impairment. However, Lincoln did not point to any specific listing which she believes she meets or equals and the undersigned does not find any.[5] This issue is meritless.

Finally, Lincoln contends the ALJ erred in finding she has the residual functional capacity to perform the full range of sedentary work. Lincoln argues that Dr. Leglue's assessment of her residual functional capacity was not contradicted by any other medical care provider, and that the ALJ erred in substituting his opinion for that of the treating doctor.

A claimant's impairments may cause physical or mental limitations that affect what she can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §404.1545, §416.945.

---

[5] The ALJ considered and rejected Listing 1.04 for her neck and back pain, Listing 1.06 for carpal tunnel syndrome, and her impairments (both severe in nonsevere) in combination with her obesity for equivalence to a listing (Tr. pp. 34-35).

Although the burden of proof in a disability case is on the claimant to show that she is unable to perform her usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein.  Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984).  The Commissioner has the burden to establish a claimant's residual functional capacity.  Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

For cases at the administrative law judge hearing level, the ALJ has the responsibility for deciding a claimant's residual functional capacity.  20 C.F.R. § 404.1546, § 416.946.  The ALJ must perform a "function-by-function" assessment of the claimant's ability to engage in work-related activities when making his RFC determination.  SSR 96-8p.  When making the RFC determination an ALJ must consider objective medical facts, diagnoses and medical opinion based on such facts, and subjective evidence of pain or disability testified to by the claimant or others.  20 C.F.R. § 404.1545(a).  Moreover, the ALJ must specify the evidentiary basis for his RFC determination.  SSR 96-8p.  Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

In the case at bar, the ALJ stated that he did not accept the limitations on physical activity imposed by Dr Leglue because he had not seen Lincoln in sixteen months, since May 7, 2007 (Tr. p. 34).  The ALJ explained that he considered all of Lincoln's

16

symptoms, her complaints of pain, the objective medical evidence, her testimony, and the fact that the carpal tunnel syndrome in Lincoln's right arm had not caused her to lose any strength in her right hand, though noting she may have to wear her cock-up splint on her right hand and wrist at work (Tr. pp. 35-36). The ALJ made a well-considered analysis of Lincoln's residual functional capacity and determined that sedentary level work would accommodate her pain (to the extent her complaints were accepted as credible), and noted that a limitation to sedentary work is a serious limitation for a 38 year old woman (Tr. p. 36).

Lincoln contends the ALJ erred in substituting his opinion as to her residual functional capacity for that of the treating physician, Dr. Leglue. ALJs have been warned by the courts against "playing doctor" and making their own independent medical assessments. <u>Frank v. Barnhart</u>, 326 F.3d 618 (5th Cir. 2002). However, in this case, the ALJ's limitation to sedentary work is more restrictive than Dr. Leglue's, who found Lincoln can lift-carry at the light work level[6] and can walk/stand more than sedentary level work[7] requires. Most relevant are Dr. Leglue's

---

[6] "Light work" is defined in 20 C.F.R. § 404.1567(b) and § 416.967(c) as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

[7] The Social Security regulations define sedentary work in §404.1567(a) as follows: "Sedentary work involves lifting no more

limitations on fingering, handling, reaching, feeling, pushing and pulling due to Lincoln's right side carpal tunnel syndrome; those limitations are not supported by the medical evidence since Lincoln does not have decreased strength or sensation in either hand (Tr. p. 34). The weight to be given a physician's statement is dependent upon the extent it is supported by specific clinical findings. Elzy v. Railroad Retirement Board, 782 F.2d 1223, 1225 (5th Cir. 1986); Jones v. Heckler, 702 F.2d 616, 621 (5th Cir. 1983). Since Dr. Leglue's limitations as to fingering, handling, etc. are not supported by the medical evidence, the ALJ correctly rejected them. Also, although Dr. Leglue stated Lincoln would need unscheduled breaks due to pain and fatigue, that limitation was based on her performing work more physically strenuous than sedentary work. There is not evidence to show that limitation is applicable if Lincoln is doing only sedentary level work.

Finally, Lincoln complains the ALJ referred several times in his opinion to the fact that she needed to lose weight as advised by her doctors and that, if she did, some of her medical problems and pain would probably resolve.[8] However, since the ALJ did not

---

than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

[8] What the ALJ stated is common knowledge. "Obesity" is a term used to describe body weight that is much greater than that which is considered healthy. Adults with a BMI greater than 30 are considered obese. Anyone more than 100 pounds overweight or with a BMI greater than 40 is considered morbidly obese. Obesity

rely on the fact that Lincoln does not appear to be making any attempt to lose weight in rejecting her claim for benefits,[9] Lincoln was not prejudiced by the ALJ's comments.

Therefore, the ALJ's/Commissioner's determination as to Lincoln's residual functional capacity is supported by substantial evidence.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Lincoln's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be

---

is a significant health threat because the extra weight puts unusual stress on all parts of the body, and it increases the risk of diabetes, stroke, heart disease, kidney disease, gallbladder disease, high blood pressure, high cholesterol, some types of cancer, osteoarthritis, and sleep apnea. MEDLINEplus Health Information, Medical Encyclopedia: Obesity, *available at* http://www.nlm.nih.gov/medlineplus/encyclopedia.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

[9] If a claimant does not follow the prescribed treatment without a good reason, she will not be found disabled. 20 C.F.R. § 404.1530(b).

19

considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 29th day of June, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE